IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JEROME W. OSBERGER,**

        **Petitioner,**

v.                                                     **Civil Action No. 2:10cv97**
                                                    **(Judge Bailey)**

**JOEL ZIEGLER, Warden,**

        **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* petitioner initiated this § 2241 habeas corpus action on August 17, 2010. [Dckt. 1] After the petitioner paid the required filing fee, the Court directed the respondent to show cause why the petition should not be granted. [Dckt. 8]

On November 9, 2010, the respondent filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, with supporting memorandum. [Dckt. 37 & 38] Because the petitioner is proceeding without counsel, the court issued a Roseboro Notice, advising the petitioner of his right to respond. [Dckt. 40] The petitioner filed his response on April 4 2011.[1]

### II. Contentions of the Parties

**A. The Petition**

In the petition, the petitioner asserts that SIS Technician J. Duranko ("Duranko"), an

---

[1] The petitioner originally filed a response on December 6, 2010. [Dckt. 49] However, because the petitioner's response exceeded the page limitations of Local Rule 11.2, the respondent requested that it be stricken from the record. [Dckt. 57] The respondent's motion was granted on February 16, 2011, and the petitioner was directed to file a response which complied with the appropriate page limitations. [Dckt. 61] The petitioner filed a second response on April 4, 2011. [Dckt. 67]

employee of the Bureau of Prisons ("BOP") at FCI-Morgantown, retaliated against him by filing false incident reports against him and forcing him to sign false statements under threat of physical harm.[2] [Dckt. 1 at 4] The petitioner asserts that Duranko's actions violated 28 C.F.R. § 541.10(B)(4), which states that disciplinary action may not be capricious or retaliatory. *Id.* at 5.

Additionally, the petitioner asserts that on May 26, 2010, Duranko placed him in the Special Housing Unit ("SHU") under false pretenses and for retaliatory purposes. *Id.* In support of this claim, the petitioner asserts that two hours after he had informed Duranko that he had spoken to his attorney about pursuing a formal complaint against staff at FCI-Morgantown, the petitioner was placed in the SHU. *Id.* The petitioner's complaint against staff contained allegations that he had begged and pleaded with staff, including Duranko, to investigate claims that he was being blackmailed by another inmate, and that staff had failed to investigate his claims. *Id.*

Eventually, Duranko wrote six incident reports against the petitioner, one on May 26, 2010 and five on June 10, 2010. *Id.* The petitioner asserts that such reports were false and violated his rights. *Id.*

Next, the petitioner asserts that the BOP blatantly disregarded its own policy and procedures by failing to conduct an SRO hearing as to his administrative detention, as required by 28 C.F.R. § 541.22. *Id.* In addition, the petitioner contends that he has been refused staff assistance. *Id.* at 6. Finally, the petitioner asserts that after 60 days in the SHU, he has not received an SRO or DHO hearing, that his health is deteriorating, that he has been refused calls to his attorney and forms. *Id.*

The plaintiff admits in his complaint that he has not exhausted his administrative remedies

---

[2]Duranko allegedly told the petitioner that he would "beat his ass," and also allegedly called the petitioner's wife and threatened her with criminal prosecution and arrest for violations of the Patriot Act. [Dckt. 1 at 5]

2

with regard to these claims, he asserts, however, that he has failed to do so out of fear of retaliation and because he has been refused his SRO hearing, there is nothing to appeal. *Id.*

As relief, the petitioner seeks:

(1) to serve the remainder of his sentence in home confinement;

(2) his immediate release from the SHU;

(3) expungement of the illegal and improper incident reports from his record;

(4) a custody transfer to a suitable facility in the Ohio region as soon as possible to avoid any further abuse, retaliation and extortion.

**B.   The Respondent's Motion**

In his motion, the respondent asserts that in May 2010, several inmates at FCI-Morgantown came under investigation for violating Code 217 -- giving money to, or receiving money from, any person for purposes of introducing any illegal contraband or for any other illegal or prohibited purpose. [Dckt. 38 at 2] In the petitioner's case, he was investigated for arranging for his friends to provide other inmates with money in order for those inmates to buy him commissary items which the petitioner could then use to pay for tobacco. *Id.*

As part of the investigation, the petitioner was interviewed by SIS Technician Duranko on May 26, 2010. *Id.* According to Duranko, the plaintiff admitted that he was having his family and friends send money to other inmates. *Id.* However, the petitioner also told Duranko that he was being extorted by other inmates and that his wife had received two threatening letters from the those inmates. *Id.* Duranko requested copies of the threatening letters, but never received any, and found no independent evidence to corroborate the petitioner's claim that he was being threatened or extorted by other inmates. *Id.* at 3. The only information Duranko received from the petitioner's

3

wife was several Western Union receipts showing that she or others she knew had indeed deposited money into other inmates' accounts. *Id.*

Therefore, on May 26, 2010, the same day Duranko interviewed the petitioner, the petitioner was placed in administrative detention in the SHU. *Id.* According to Duranko, the petitioner was placed in the SHU to protect the integrity of the investigation. *Id.*

In June 2010, Duranko completed his investigation and issued six incident reports against the petitioner for violating Code 217. *Id.* Each incident report was related to a separate inmate to whom the petitioner had given money between October 20, 2009 and March 4, 2010. *Id.* Significantly, the inmates who received the money were also given incident reports. *Id.*

The petitioner received notice of the charges against him on June 15, 2010. *Id.* The petitioner's DHO hearing was held on October 15, 2010, after the petitioner had requested four previous hearings be rescheduled. *Id.* at 3-4.

At his DHO hearing, the petitioner was advised of his rights and acknowledged that he understood them. *Id.* at 4. The petitioner received staff representation and called witnesses on his behalf. *Id.* The petitioner was found guilty on each of the six incident reports. *Id.* As to his claim that he made the payments because he was being extorted by other inmates, the DHO found the petitioner's testimony not credible because he could not state a reason for the extortion. *Id.* As sanctions for each report, the petitioner lost good credit time, time in disciplinary segregation, loss of visitation and loss of either commissary or telephone privileges. *Id.*

With this in mind, the respondent requests the dismissal of the petition on the following grounds:

(1) the petitioner did not exhaust his administrative remedies;

4

(2) the petitioner received all of the process he was due with respect to his disciplinary proceedings;

(3) the evidence relied on by the DHO was sufficient for a finding of guilt;

(4) the petitioner's retaliation claims are without merit;

(5) the petitioner's allegations concerning his placement in the SHU without the required hearings are baseless; and

(6) the petitioner was not denied calls to his attorney, forms, nor was he threatened with shipment to a medium security facility.

*Id.* at 6-18.

### C. The Petitioner's Response

In his response, the petitioner asserts that his petition contains the "entire body of information and evidence provided by Petitioner" and that his "exhibits and all attached information and documentation . . . clearly shows the depth of the fraudulent statements, declarations and documentation provided to the Court in furtherance of the Respondent's defensible position." [Dckt. 67 at 1-2] Thus, the petitioner asserts that "[f]or all the reasons as stated herein together with the Exhibits and supporting information provided by Petitioner . . . the Court should not dismiss this case and or otherwise rule against Petitioner in this matter." *Id.* at 3.

### III. Analysis

A § 2241 petition is used to attack the manner in which a sentence is executed. See 28 U.S.C. § 2241. More specifically, a § 2241 petition is appropriate where a prisoner challenges the fact or length of his confinement, but generally not the conditions of that confinement. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973). Thus, proper remedy lies in habeas corpus only if "success in [an] action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 82 (2005). Otherwise, a challenge to prison conditions or

procedures should be filed as a civil rights action. *Id.* at 81. Therefore, the Court must look to see whether the petitioner's claim most directly seeks relief against persons acting color of state or federal law for violations of a right secured by the Constitution of the United States, or attacks the legality of the petitioner's custody. See Lee v. Winston, 717 F.2d 888, 892 (4th Cir. 1983).

In his § 2241 petition, the petitioner makes the following claims:

(1) Duranko retaliated against him by

    (a) filing false incident reports,
    (b) manufacturing false statements and forcing him to sign them under threat of physical harm to himself and his wife, and
    (c) placing him in the SHU;

(2) Duranko violated BOP regulations by

    (a) filing retaliatory disciplinary reports, and
    (b) writing false disciplinary reports;

(3) Duranko violated federal criminal statutes by filing false statements and falsifying records of the BOP;

(4) the BOP has violated its regulations by

    (a) refusing him an SRO hearing,
    (b) refusing him the assistance of staff,
    (c) not conducting his DHO hearing within 60 days,
    (d) refusing him attorney calls, and
    (e) refusing him forms;

(5) the plaintiff also complains that his health is deteriorating and that he is forced to endure heat with no circulation of air; and

(6) that he was threatened with transfer to a medium security facility by Fred Caromano.

Here, the petitioner files a mix of claims. His claims that his disciplinary reports were

retaliatory and false, and violated BOP regulations,[3] clearly affect the fact or length of his sentence because the petitioner has since been found guilty of the charges and lost good conduct time. Therefore, if the Court were to expunge those reports as the petitioner has requested, his good conduct time would be restored, affecting his sentence calculation. However, his claims that he was placed in the SHU for retaliatory purposes; that the BOP has refused him an SRO hearing; refused him attorney calls; refused him forms; has forced him to endure heat with no circulation of air, contributing to the deterioration of his health; and has threatened to transfer to a medium security facility, most directly attack the conditions of his confinement. Thus, those claims are not properly raised under § 2241 and should be dismissed.

As to the petitioner's claim that his disciplinary reports should be expunged, the BOP is charged with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States. § 4042(a)(3) (emphasis added). Therefore, the BOP has promulgated rules for inmate discipline. 28 C.F.R. § 541.10, et seq.

Moreover, prison disciplinary proceedings are not part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). However, inmates are entitled to some due process protections. *Id.* Those

---

[3] The petitioner claims that Duranko violated BOP regulations by filing retaliatory disciplinary reports and writing false disciplinary reports. He also asserts that BOP regulations were violated during his disciplinary proceedings when he was refused staff assistance and when his disciplinary hearing was not held with 60 days.

protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. *Id.* On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. *Id* at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 117 S.Ct. 1584 (1985).

In this case, it is undisputed that the petitioner received all of the due process safeguards delineated in Wolff.[4] The crux of the petitioner's claim is that he did not commit the charged violations and/or that he had justification for committing the charged violations. In essence, he alleges that the evidence was insufficient to uphold the DHO's guilty finding..

The evidence presented to the DHO consisted of six incident reports alleging that on several dates between October 20, 2009, and March 4, 2010, the petitioner had his family and friends deposit money in the accounts of other inmates, so they could purchase goods from the commissary to give to the petitioner to pay for contraband such as tobacco. [Dckt. 38, Ex. 3 at Ex. C-H] According to the incident reports, the petitioner admitted such behavior. *Id.* Moreover, during the DHO hearing,

---

[4]Petitioner was advised of the charges against him on June 10, 2010. [Dckt 38., Ex. 3 at ¶ 8 and Att. A.] He was advised on June 15, 2010, that the charges had been referred to a Discipline Hearing Officer and of his rights at such a proceeding. *Id.* at ¶ 9 and Att. B. The petitioner's disciplinary hearing was held on October 15, 2010. *Id.* at ¶ 10 and Att. C-H. The petitioner requested staff representation. *Id.* at ¶ 9 and Att. B. Although his first choice was unavailable, the petitioner consented to another staff representative. *Id.* at ¶ 9. The petitioner was permitted to call available witnesses, and he did so. *Id.* at ¶¶ 9 & 10 and Att. C-H. The DHO made written findings of the evidence relied on and the reasons for the disciplinary action. *Id.* at Att. C-H.

8

the petitioner admitted that these individuals had deposited money into the accounts of other inmates, but argued that they did so because he was being extorted by another inmate, Michael Douglas. *Id.* However, when asked, the petitioner offered no reason or explanation for why inmate Douglas would extort from him. *Id.* In addition, the DHO considered the Western Union receipts provided by the petitioner's wife, and testimony from petitioner's witness, inmate Derrik Hagerman, alleging that he saw another inmate talking harshly to the petitioner and that the petitioner refused to talk about it afterward. *Id.*

In making her guilty finding, the DHO found that it was "neither reasonable nor logical" for the petitioner to not know why inmate Douglas was extorting from him. *Id.* The DHO found this deceptive, and noted that there was no other independent evidence to support the petitioner's claim that inmate Douglas was extorting him. *Id.* The DHO also noted that while inmate Hagerman had seen another inmate speaking harshly to the petitioner, inmate Hagerman could not identify the inmate, nor confirm the content of the conversation, and that his testimony was therefore, irrelevant. *Id.* The DHO gave greater weight to the statement of the reporting officer and to the documentation substantiating the officer's statement, including the petitioner's alleged admissions. *Id.* Clearly there was "some evidence" to support the findings of the disciplinary hearing officer, and the petitioner's claim should be dismissed on the merits.

## IV. Recommendation

For the reasons stated, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment [dckt. 37] be **GRANTED**, and the petitioner's § 2241 petition [dckt. 1] be **DENIED** and **DISMISSED with prejudice** as to those claims that were properly raised under § 2241. As to the petitioner's constitutional claims, the undersigned

9

recommends that those claims be **DISMISSED without prejudice** to the petitioner's right to re-file them in a civil rights action.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt, to his last known address on the docket, and to counsel of record via electronic means.

DATED: April 26, 2011.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE